IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-03018-PAB

RUSTY L. BOWER,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER

---

    This matter is before the Court on plaintiff Rusty Bower's complaint [Docket No. 1] filed on November 6, 2014.  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I.  BACKGROUND

    On January 27, 2012, plaintiff applied for disability insurance benefits under Title II of the Act.  R. at 11.  Plaintiff alleged that he had been disabled beginning October 30, 2010.  *Id.*   After an initial administrative denial of his claim, plaintiff appeared at a hearing conducted by an Administrative Law Judge ("ALJ") on June 18, 2013.  *Id.*  On July 1, 2013, the ALJ denied plaintiff's claim.  *Id.* at 21.  The ALJ found that plaintiff had the severe impairments of status post pelvic fracture, degenerative disc disease of the

cervical and lumbar spine, right shoulder adhesive capsulitis, and osteoarthritis. *Id.* at

13. The ALJ found that these impairments, alone or in combination, did not meet or

medically equal one of the regulations' listed impairments, *id.* at 15, and found that

plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. § 404.1567(b) with the following
> limitations: [plaintiff] can stand and/or walk 2 to 4 hours in an 8-hour day; he can
> sit for as much as six hours in an 8-hour day; he should be allowed to alternate
> between sitting and standing as necessary; pushing and pulling with the lower
> extremities is limited to the exertional range; pushing and pulling with the upper
> right extremity is limited to 10 to 15 pounds; pushing and pulling with the left
> upper extremity is limited to the exertional range; [plaintiff] cannot climb ladders,
> ropes, or scaffolds; he can occasionally climb ramps and stairs; he can
> occasionally balance, stoop, kneel, and/or crouch; he can never crawl; he is
> limited to occasional overhead reaching with the right upper extremity, and can
> frequently reach in all other directions with the right upper extremity; he should
> avoid concentrated exposure to extreme cold and to vibration; he should avoid
> concentrated exposure to hazards such as unprotected heights and unprotected
> major manufacturing machinery; he can perform work at the skilled level.

*Id.* at 15-16. Based upon this RFC and in reliance on the testimony of a vocational

expert ("VE"), the ALJ concluded that plaintiff "is capable of performing past relevant

work as a logistics specialist," which "does not require the performance of work-related

activities precluded by [plaintiff's RFC.]" *Id.* at 19. As an alternative finding, the ALJ

found, based on the testimony of the VE, that "there are other jobs that exist in

significant numbers in the national economy that [plaintiff] also can perform." *Id.* at 20.

The Appeals Council denied plaintiff's request for review of the ALJ's denial. R.

at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

3

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

4

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) failing to consider plaintiff's chronic pain disorder, obesity, and lumbar spine impairment in formulating his RFC; (2) failing to evaluate the credibility of plaintiff's subjective complaints as required by 20 C.F.R. § 404.1529; and (3) improperly weighing the medical evidence of record. *See generally* Docket No. 10.  Additionally, plaintiff states that, if the ALJ had properly weighed the medical evidence in determining plaintiff's RFC, the Medical-Vocational Guidelines would direct a finding that plaintiff is disabled. *Id.* at 22.  The relevant evidence of record is as follows.

Plaintiff served in the military as a logistics specialist before his retirement from service.  R. at 34.  After leaving the military, plaintiff worked as a pest elimination service specialist for about a year, but was fired from his job in August 2010 for failing to return to work following the death of his wife. *Id.* at 31.  On October 30, 2010, plaintiff was involved in a motorcycle collision and suffered a pelvis fracture for which he underwent surgery. *Id.* at 203-04.

On May 27, 2011, plaintiff appeared for an initial visit with Dr. Stephen Farkas and complained of "several issues."  R. at 612.  Plaintiff informed Dr. Farkas that he had been in physical therapy for some time for a "right frozen shoulder," but did not make progress so his insurance stopped paying for the treatment. *Id.* at 612-13.

5

Plaintiff also complained of chronic pain issues in his pubic area. *Id.* at 613. Dr. Farkas opined that plaintiff suffered from chronic pain related to his pelvic fracture, adhesive capsulitis of the shoulder, venous thrombosis, joint pain, and hypertension. *Id.* at 616-17. Dr. Farkas further noted that plaintiff has a history of alcohol abuse. *Id.* at 613. At a visit on June 22, 2011, Dr. Farkas noted that a steroid injection relieved much of plaintiff's shoulder pain and improved his range of motion. *Id.* at 566. Dr. Farkas again discussed plaintiff's chronic pain and prescribed hydrocodone and amitriptyline. *Id.*

On July 20, 2011, plaintiff saw a specialist, Dr. Matthew Javernick, for a consultation on his right shoulder pain. R. at 539. Plaintiff reported that his pain was significantly decreased except when attempting to lift objects and perform overhead activities. *Id.* at 540. Dr. Javernick wrote that he suspected that plaintiff's adhesive capsulitis was resolving and that the cause of his shoulder pain was irritation or a possible tear of his rotator cuff caused by the motorcycle accident. *Id.* at 541. On August 9, 2011, plaintiff saw Dr. Farkas and stated that he intended to take a motorcycle trip to the East coast and asked for another steroid injection in his shoulder to "head off any problems on the trip." *Id.* at 509. Plaintiff requested a refill of his Vicodin prescription and reported that he had been taking the medication much less frequently. *Id.*

On October 17, 2011, plaintiff reported that his right shoulder was doing better overall though he still had positional pain and that, on his motorcycle trip, he had problems with alcohol abuse and was "recurrently intoxicated." *Id.* at 438. Dr. Farkas noted that plaintiff recently started counseling. *Id.* Plaintiff reported that his shoulder

was "[d]oing well" and that, with respect to his chronic pain, he "[r]eally feels better overall." *Id.* at 439.

On December 5, 2011, plaintiff complained of joint pain in his left hip. R. at 386. Dr. Farkas gave plaintiff a steroid injection that relieved most of his pain. *Id.* at 388. At a follow-up on December 27, 2011, plaintiff reported mild improvement in his left hip pain and that his shoulder was doing well overall. *Id.* at 372. Dr. Farkas noted that, despite the steroid injection, plaintiff's pain was still present and "limits his mobility to some degree." *Id.* at 374. He referred plaintiff to physical therapy. *Id.* at 375. On January 19, 2012, plaintiff reported that, since he began physical therapy, his hip pain had been getting worse, requiring him to take up to six Vicodin per day to keep comfortable. *Id.* at 348. Dr. Farkas prescribed morphine and referred plaintiff to a pain management clinic. *Id.* On February 16, 2012, plaintiff was evaluated by Dr. John Bissell. R. at 1074. Plaintiff reported that his pain was 5/10 at the time of his evaluation, 7/10 at rest generally, and 10/10 with activity. *Id.* Plaintiff stated that bending and sitting aggravate his pain. *Id.* Dr. Bissell observed that plaintiff was overweight and in no apparent distress, had 4/5 strength in right triceps and biceps and mild atrophy, but otherwise had 5/5 strength in both upper and lower limbs and no other atrophy. *Id.* at 1075. Plaintiff's lumbar flexion and extension and his cervical range of motion were 50% of normal and he had normal bilateral shoulder, hip, and knee ranges of motion. *Id.* at 1075-76. Dr. Bissell prescribed OxyContin, Norco, Flector Patch, Lidoderm, and Cymbalta. *Id.* at 1076. Plaintiff continued pain management treatment with Dr. Bissell through at least May 2013. *Id.* at 1186. On June 25, 2012, Dr. Bissell

7

gave plaintiff a steroid/anesthetic injection in his hip that provided over six months of pain relief. *Id.* at 1194. In September 2012, Dr. Bissell gave plaintiff a right shoulder steroid/anesthetic injection that resulted in a 90% improvement in plaintiff's pain. *Id.* at 1203.

On February 20, 2012, Dr. Farkas completed a physical medical source statement on plaintiff's behalf. R. at 1126-30. Dr. Farkas opined that plaintiff can walk 2-4 city blocks without rest or severe pain, can sit more than two hours and stand 30 minutes at a time, can stand and/or walk about two hours in an eight-hour workday, and can sit at least six hours in an eight-hour workday. *Id.* at 1127. Dr. Farkas stated that plaintiff needs a job that permits shifting positions at will and must walk around every 60-90 minutes for 3-5 minutes at a time. *Id.* Regarding plaintiff's physical capabilities, Dr. Farkas opined that plaintiff can lift less than ten pounds frequently and can lift 20 pounds occasionally but can never lift 50 pounds. *Id.* at 1128. Dr. Farkas also stated that plaintiff would likely be absent from work about two days per month as a result of his impairments. *Id.* at 1129.

Plaintiff never sought mental health treatment and no treating source has diagnosed a mental health impairment. A state agency consultant, Dr. MaryAnn Wharry, reviewed plaintiff's medical record and stated that, while there is evidence of an organic mental disorder, a personality disorder, and a substance addiction disorder, none of the impairments were severe or met one of the regulations' listed impairments. R. at 57-58.

### 1. Failure to Consider All Impairments

Plaintiff argues that the ALJ failed to evaluate plaintiff's chronic pain disorder, obesity, lumbar spine impairment, and depression when formulating plaintiff's RFC. Docket No. 10 at 11-16.  The Commissioner argues that plaintiff's obesity and chronic pain disorder are not medically determinable impairments, that the ALJ addressed plaintiff's lumbar spine impairment, and that plaintiff did not complain of any mental impairments when he applied for benefits or allege any mental limitations when he described his functional abilities.  Docket No. 11 at 6-9.

### a.  Obesity

Plaintiff states that the evidence of record places plaintiff's Body Mass Index ("BMI") between 30.9 and 33.8, which qualifies as level I obesity.  Docket No. 10 at 13; *see also* SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002) ("Level I [obesity] includes BMIs of 30.0-34.9").  The Commissioner responds that, in evaluating a claimant's obesity, BMI is not determinative and the Commissioner generally relies on the judgment of a physician.  Docket No. 11 at 6.

The Court agrees with the Commissioner.  SSR 02-1p states that, "[w]hen establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height."  2002 WL 34686281, at *3.  Where there is no diagnosis of obesity but the record shows "consistently high body weight or BMI," the ALJ may ask a medical source to clarify whether the claimant has obesity but will in most cases use his or her judgment to establish the presence of obesity based on the evidence of record.  *Id.*  Here, plaintiff identifies, and the Court has found, no diagnosis

9

of obesity in plaintiff's lengthy medical history.  In contrast, plaintiff is consistently described as "overweight," rather than obese.[1]  Given the absence of a medical diagnosis of obesity consistent with observations that plaintiff is merely overweight, the Court finds that the ALJ did not err in failing to consider obesity as a medically determinable impairment.

### b.  Chronic Pain Disorder

Plaintiff states that his physicians "have consistently diagnosed him as having a chronic pain disorder, distinct from his chronic hip pain, shoulder pain, and neck pain," and argues that the ALJ erred in failing to mention the "chronic pain" diagnosis in his decision.  Docket No. 10 at 11.  The Commissioner responds that plaintiff's treaters did not diagnose him with "chronic pain disorder," but merely commented that plaintiff suffered from "chronic pain."  Docket No. 11 at 7.  The Court need not resolve whether plaintiff's treaters' reference to "chronic pain" constituted a diagnosis of the medically-determinable impairment of "chronic pain disorder."[2]  The record reflects that the ALJ considered all of plaintiff's complaints of pain, both in plaintiff's own testimony and in his medical records.  R. at 16-17.  Specifically, the ALJ questioned plaintiff at length about his pain and its effect on his functional capacity, including every area where plaintiff stated that he suffers from pain.  The ALJ questioned plaintiff about his complaints of

---

[1]*See* R. at 373, 387, 439, 510, 553, 1075, 1186, 1192, 1203, 1206, 1213, 1222, 1236.

[2]The Court notes that, during his initial visit with Dr. Farkas, Dr. Farkas described plaintiff's "chronic pain" as "[r]elated to the pelvic fracture with fixation device and right shoulder."  R. at 616.  Thus, it is not clear, as plaintiff states, that Dr. Farkas or any other treater diagnosed plaintiff with "chronic pain disorder, distinct from his chronic hip pain, shoulder pain, and neck pain."  Docket No. 10 at 11.

pelvis pain (*id.* at 37), shoulder pain (*id.* at 38), neck pain (*id.* at 40), lower back pain (*id.* at 41), pain in his right hand (*id.* at 42), whether plaintiff experiences good and bad days with his pain (*id.*), and whether there was any additional information that plaintiff felt the ALJ needed to evaluate his impairments.   *Id.* at 44.   The ALJ discussed plaintiff's subjective testimony concerning his pain at length in his decision, *id.* at 16-17, and then compared those complaints to the medical evidence, including plaintiff's treatment history with Dr. Bissell, plaintiff's pain management specialist.   *Id.* at 17-19. Given the ALJ's extensive discussion of both plaintiff's subjective reports of pain and his history of treatment for that pain, the Court sees no error in the ALJ's failure to recite the precise phrase, "chronic pain disorder."   *See Mondragon v. Astru*e, 364 F. App'x 346, 349 (9th Cir. 2010) (unpublished) (finding that the ALJ did not err in failing to find a plaintiff's chronic pain disorder a severe impairment where "[t]he ALJ discussed the relevant medical evidence related to [chronic pain disorder] and determined that any . . . chronic pain disorder did not impose functional limitations in excess of [plaintiff's] physical impairments").   While plaintiff points to other symptoms, such as "fatigue, sleep disturbance, decreased appetite, and mood changes," that an individual diagnosed with "chronic pain disorder" may suffer in addition to pain, Docket No. 10 at 12, plaintiff does not point to any evidence that plaintiff's alleged chronic pain disorder imposes such limitations on plaintiff beyond those that the ALJ considered in discussing plaintiff's complaints of pain.   In the absence of such specific evidence of a functional limitation caused by this purported impairment, the Court sees no error in the ALJ's consideration of plaintiff's pain in relation to his functional capacity.

### c.  Lumbar Spine Impairment

Plaintiff states that, in addition to degenerative disc disease, which the ALJ found to be a severe impairment, plaintiff also suffers from an "annular tear at the L5-S1 level."  Docket No. 10 at 14.  The Commissioner responds that the ALJ specifically addressed this impairment and that it is "unclear what more Plaintiff believes the ALJ should have done."  Docket No. 11 at 8.  The Court agrees with the Commissioner.  First, plaintiff does not argue that his lumbar spine impairment causes any functional limitations not already considered by the ALJ in his RFC assessment.   Second, in the ALJ's RFC determination, the ALJ specifically noted that an MRI in February 2012 showed an "annular tear with disc protrusion at L5-S1."  R. at 18.  Thus, to the extent that plaintiff's argument is that the ALJ's failure to list the annular tear as a "severe impairment" at step two was reversible error, the Court finds that the ALJ's consideration of this impairment at step three satisfied his obligation to "consider the combined effect of all . . . impairments[.]"   20 C.F.R. § 404.1523;  *see also Coffman v. Astrue*, 2011 WL 4436611, at *3 (D. Kan. Sept. 23, 2011) (an error at step two is harmless unless "it affects the ALJ's findings at steps four and five, when the ALJ must . . . consider both severe and non-severe medically determinable impairments") (citing *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished) (internal quotations omitted)).

### d.  Depression

Plaintiff argues that, since the ALJ found that plaintiff's depression is a mild impairment, the ALJ was required to consider this impairment in determining plaintiff's RFC.  Docket No. 10 at 16.  As the Commissioner argues, however, plaintiff did not

allege any specific functional limitations due to his mental condition.  In the absence of any such specific claimed impairment, the Court will take the ALJ at his word that he considered all of plaintiff's impairments in combination.  *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter") (citation and quotation omitted).

### 2. *Credibility Evaluation*

Plaintiff argues that the ALJ's decision is deficient because the ALJ "made no observations and drew no conclusions about the credibility of [plaintiff's] subjective complaints of pain and other symptoms" as required by 20 C.F.R. § 404.1529(c)(4).  Docket No. 10 at 17.  Plaintiff states that, rather than evaluate plaintiff's subjective complaints, the ALJ merely summarized the medical evidence and found in conclusory fashion that plaintiff's limitations are not disabling.  *Id.*

"Credibility determinations are peculiarly the province of the finder of fact" and the Tenth Circuit will uphold such determinations, so long as they are supported by substantial evidence.  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  Credibility determinations should not be conclusory, but instead "closely and affirmatively linked" to evidence in the record.  *Id.*  In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

13

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). The ALJ must set forth "the specific evidence he relies on in evaluating the claimant's credibility," but is not required to undergo a "formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ summarized plaintiff's subjective complaints of pain and found that plaintiff's statements about the "intensity, persistence and limiting effects" of his symptoms were not entirely credible. R. at 16-17. The ALJ noted discrepancies between plaintiff's reports of pain to his treaters – namely, that plaintiff reported 7/10 pain even at rest to Dr. Bissell, while to his physical therapists plaintiff "never reported a pain level higher than 6 and generally reported pain levels at 5 or below." *Id.* at 18. The ALJ further noted that plaintiff's medical records showed that injections provided him relief from pain for six months and that, after an injection in his shoulder, plaintiff reported 90 percent relief from his pain. *Id.* (citing R. at 1194, 1203). The Court disagrees with plaintiff's assessment that the ALJ's decision "does not contain an

14

evaluation of credibility." Docket No. 10 at 17. The ALJ summarized plaintiff's subjective complaints and found that, when compared with specific evidence in the record, plaintiff's complaints were not fully credible. This is sufficient to meet the ALJ's burden of supporting his finding with substantial evidence.

### 3. Weighing Dr. Farkas's Opinion

Plaintiff argues that the ALJ improperly discounted Dr. Farkas's opinion because of a perceived inconsistency for which the ALJ did not seek clarification. Docket No. 10 at 19-20. Specifically, plaintiff argues that the ALJ erred in finding that plaintiff can stand and/or walk two to four hours in an eight-hour workday without discussing Dr. Farkas's opinion that plaintiff is limited to standing and walking about two hours per day. *Id.* at 20. Plaintiff states that this is significant because Dr. Farkas's standing and walking limitations would limit plaintiff to the sedentary range of work. *Id.*

A treating physician's opinion is entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The Tenth Circuit has articulated a two-step test for determining whether the opinion of a treating source is entitled to controlling weight:

> An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96–2p, 1996 WL 374188, at *2 (quotations omitted). If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.*

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "A finding that a treating

source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected.  It may still be entitled to deference and be adopted by the adjudicator."  SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996).  The level of deference accorded a non-controlling opinion of a treating physician depends on a number of factors, including the length of the treating relationship, the nature and extent of the relationship, the supportability of the opinion and its consistency with the record as a whole, and the physician's medical specialization.  20 C.F.R. § 404.1527(c)(2)-(6).  An ALJ need not expressly discuss the application of each factor to each medical opinion, so long as the ALJ's opinion is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal citations omitted).  "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (internal citations omitted).

In giving Dr. Farkas's opinion "some weight," the ALJ noted an inconsistency between Dr. Farkas's opinion that plaintiff would need to walk around for a few minutes every 60-90 minutes and the opinion that plaintiff could sit for more than two hours at one time and for six hours in an eight-hour workday.  R. at 19.  The ALJ stated that this inconsistency "is somewhat erosive of the credibility of Dr. Farkas' findings," but that Dr. Farkas' "assessment as a whole, however, is generally consistent with the evidence of record showing that the claimant's pelvis and shoulder injuries have healed

16

considerably since his October 2010 accident." *Id.*[3]

The Court finds that plaintiff correctly points out an error in the ALJ's finding. The ALJ stated that Dr. Farkas's opinion was generally consistent with the record as a whole, but he implicitly rejected Dr. Farkas's opinion concerning the limits on plaintiff's ability to stand and walk without discussing that opinion. R. at 19. This was error. The ALJ is required to discuss "significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). While the ALJ discussed Dr. Farkas's opinion generally and noted one basis for doubting Dr. Farkas's credibility, this was not a sufficient basis to disregard, without explanation, the only medical source opinion of record on a key component of plaintiff's RFC. Thus, the ALJ's finding that plaintiff can stand and/or walk two to four hours a day is not supported by substantial evidence.

Notwithstanding the Court's determination that a portion of the ALJ's RFC is not supported by substantial evidence, the Court finds that the ALJ's error was harmless in light of the ALJ's finding that plaintiff was not disabled at step four because he is capable of performing past relevant work as a logistics specialist. Step four of the sequential analysis is comprised of three phases. First, the ALJ must evaluate a claimant's physical and mental RFC; second, the ALJ must determine the physical and mental demands of the claimant's past relevant work; and third, the ALJ determines whether the claimant can meet the job demands found in phase two notwithstanding his

---

[3]Plaintiff suggests that the ALJ committed error in not contacting Dr. Farkas to resolve this ambiguity. Docket No. 10 at 19. Since the ALJ adopted Dr. Farkas's conclusion as to plaintiff's ability to sit for six hours in an eight-hour day, the Court finds no error in the ALJ's failure to do so. The ALJ cited this inconsistency only as "somewhat erosive" of Dr. Farkas's credibility, but the inconsistency did not materially affect plaintiff's RFC with respect to sitting.

mental or physical limitations. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). As discussed above, the ALJ's determination of plaintiff's physical and mental RFC is supported by substantial evidence, with the lone exception of the ALJ's treatment of Dr. Farkas's opinion concerning plaintiff's ability to stand and walk. With respect to plaintiff's ability to meet the physical and mental demands of the logistics specialist job, the ALJ accepted the testimony of the VE that the job is skilled and falls into the sedentary classification. R. at 20 (accepting VE testimony); *see also id.* at 45, 47; Dictionary of Occupational Titles ("DOT") 019.167-010, logistics specialist.

The Court finds that the ALJ's determination that plaintiff is not disabled at step four is supported by substantial evidence. The lone deficiency that plaintiff has identified in the ALJ's RFC determination, that plaintiff is capable of standing and walking two to four hours in a workday and is thus limited to sedentary work, does not affect plaintiff's ability to perform the sedentary logistics specialist position. As such, even correcting the lone deficiency in the ALJ's RFC determination and finding that plaintiff is capable of only sedentary work, "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).[4]

### 4. Medical-Vocational Guidelines

Plaintiff argues that, when properly limited to sedentary work, Rules 201.01 and

---

[4]Given the Court's finding that the ALJ's determination that plaintiff can stand and/or walk two to four hours per day is not supported by substantial evidence, the ALJ's alternative finding, that plaintiff can perform several jobs in the "light work" category, is error. Because the ALJ's primary holding, that plaintiff is not disabled at step four, is supported by substantial evidence, this error does not require remand.

201.09 of the Medical-Vocational Guidelines, commonly referred to as the "grids," direct

a finding that plaintiff is disabled.  Docket No. 10 at 22.  Plaintiff is mistaken.  Rules

201.01 and 201.09 direct a finding of disabled for individuals with "limited or less"

education and a history of unskilled work.  20 C.F.R. Pt. 404, Subpt. P, App. 2,

§§ 201.01, 201.09.[5]  Plaintiff meets neither of those criteria.  Plaintiff completed high

school, R. at 150, and completed approximately 12 hours of college credit during his

time in the military.  *Id.* at 46.  Thus, plaintiff's education is beyond "limited," which

generally applies to individuals who have completed the 7th through 11th grades.  20

C.F.R. § 404.1564(b)(3).  Nor is plaintiff's work history limited to unskilled work.  The

record reflects that plaintiff has performed at least three different skilled positions:

assistant restaurant manager, logistics analyst, and exterminator.  R. at 45; DOT

389.684-010, exterminator (SVP-5);[6] 187.167-106, restaurant manager (SVP-7);

019.167-010, logistics specialist (SVP-8).  Given plaintiff's educational and professional

background, neither Rule 201.01 nor 201.09 directs a finding that he is disabled.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Rusty L. Bower

---

[5]Rule 201.01 is inapplicable for the additional reason that it applies to individuals of advanced age, 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.01, while plaintiff acknowledges that, at all times relevant to the decision, he "was a person closely approaching advanced age (age 50-54)[.]"  Docket No. 10 at 22.

[6]The DOT lists a "specific vocational preparation" time, or SVP, for each described occupation.  "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

was not disabled is **AFFIRMED**.

    DATED March 31, 2016.

                                    BY THE COURT:


                                     s/Philip A. Brimmer
                                    PHILIP A. BRIMMER
                                    United States District Judge